UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LINDA L. HAVNER,

No. 14-12895

Plaintiff,

Magistrate Judge R. Steven Whalen

v.
COMMISSIONER OF
SOCIAL SECURITY,

Defendant.
_____/

**OPINION AND ORDER**

Plaintiff Linda Havner brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act. The parties have filed cross motions for summary judgment. For the reasons set forth below, Defendant's Motion for Summary Judgment [Dock. #20] is DENIED, Plaintiff's Motion for Summary Judgment [Dock. #14] is GRANTED, and the case is REMANDED FOR AN AWARD OF BENEFITS.

**I.   PROCEDURAL HISTORY**

Plaintiff applied for DIB on September 16, 2011, alleging disability as of August 15, 2011 (Tr. 11, 85). Upon denial of the claim, Plaintiff requested an administrative hearing, held March 21, 2013 in Livonia, Michigan (Tr. 25). Administrative Law Judge ("ALJ") Henry Perez, Jr. presided (Tr. 25). Plaintiff, represented by attorney Kerry Spencer, testified

(Tr. 28-37), as did Vocational Expert ("VE") Erin O'Callaghan (Tr. 37-40). On April 12, 2013, ALJ Perez found that Plaintiff was capable of performing her past relevant work as a driver's license examiner and office clerk (Tr. 19-20). On June 16, 2014, the Appeals Council denied review (Tr. 1-3). Plaintiff filed suit in this Court on July 24, 2014.

## II. BACKGROUND FACTS

Plaintiff, born March 15, 1959, was 54 at the time of the administrative decision (Tr. 20, 85). She completed 12th grade and worked as a driver's license examiner and office clerk before the alleged onset of disability (Tr. 121). She alleges disability as a result of Chronic Obstructive Pulmonary Disease ("COPD"), asthma, depression, and a hiatal hernia (Tr. 120).

### A. Plaintiff's Testimony

Plaintiff offered the following testimony at the April 12, 2013 hearing.

Her most recent past work consisted of "data entry and bookkeeping" for the Tennessee Department of Licensing (Tr. 28). She was currently collecting a disability pension (Tr. 29). Other former work involved taking driver's license applicants on road tests and cashiering (Tr. 29). The road test position did not require any lifting (Tr. 29-30). She stopped working in 2011 because she faced termination resulting from excessive absences due to sickness (Tr. 30).

Plaintiff experienced COPD, characterized by chest pain and difficulty breathing (Tr. 30). She was prescribed but was unable to afford the use of an oxygen tank (Tr. 30-31). She also experienced arthritis in all joints (Tr. 31). Her back, hips, neck, hands, wrists, and ankles were most acutely affected by the condition (Tr. 31). The hip pain was the worst (Tr.

36). On a scale of one to ten, her pain level was a "constant" four to five (Tr. 37). She required the use of a cane (Tr. 31). She took Motrin 800 for inflammation and Tramadol for pain (Tr. 37). The Tramadol helped her lung pain but did not lessen her arthritis pain (Tr. 37). She could walk "about half-way through Wal-Mart" before her joints locked up and she experienced severe breathing problems (Tr. 31). She estimated that she was limited to walking 80 feet inside her house (Tr. 32). She used a nebulizer each morning (Tr. 32). She was unable to stand or sit for more than 10 minutes at one stretch due to back pain (Tr. 32-33). Steroid injections provided month-long improvement in her back pain, but she was now unable to afford treatment (Tr. 33). She was unable to lift more than five pounds (Tr. 33).

Plaintiff experienced two to three "good" days each week during which time she could perform light housekeeping chores and shop for groceries (Tr. 34). On "bad" days, even light exertional activities made her feel as if she had "run a marathon," requiring her to recline for long periods (Tr. 34-35). She was able to use the computer (Tr. 35). She was prone to daytime sleepiness due to nighttime sleep disturbances due to arthritis pain (Tr. 35). She typically napped twice a day for a total of four hours (Tr. 36).

### B. Medical Records[1]

#### 1. Treating Records

March, 2007 pulmonary tests were positive for COPD and asthma (Tr. 375, 380-381). Plaintiff was advised to stop smoking (Tr. 375). She was prescribed Advair (Tr. 375).

---

[1] Treating records predating the alleged onset of disability are included for background purposes only.

September, 2008 treating records by Rodney Ferguson, M.D. note diagnoses of asthma and arthritis (Tr. 364). October, 2008 treating records by Dr. Ferguson state that Plaintiff requested anti-anxiety medication to quell her "outbursts" at work (Tr. 358). Dr. Ferguson prescribed Cymbalta and Xanax (Tr. 358). He noted that Plaintiff appeared "hostile and confrontational" but that she later apologized for her behavior (Tr. 323, 354). Treating records from the same month note a diagnosis of "anxiety/intermittent explosive disorder" (Tr. 360). Treating notes state that she no longer smoked (Tr. 353). April, 2009 records state that Plaintiff experienced asthma and shortness of breath (Tr. 281). In August, 2009, Plaintiff reported good results after receiving steroid injections to the knee (Tr. 264).

In March, 2010, Plaintiff reported frequent shortness of breath (Tr. 245). In May, 2010, she reported good results from Flovent (Tr. 238). June, 2010 pulmonary testing showed a "severe degree of airflow limitation" consistent with "obstruct airway disease"(Tr. 232-235). In August, 2010, she was referred to a pulmonary specialist after exhibiting chronic wheezing (Tr. 229). Dr. Ferguson noted a "marked change" in Plaintiff's condition (Tr. 228). The COPD was deemed "severe" (Tr. 214, 227). An x-ray of the lungs showed chronic fibrocalcific changes (Tr. 222). Treating notes also state a diagnosis of osteoarthritis (Tr. 214). A September, 2010 CT of the chest showed benign calcified granulosa (Tr. 203). The following month, Lewis C. Somerville, M.D. found "no significant functional impairment demonstrated" during a six-minute walk (Tr. 197, 202). Treating notes from the same month state that breathing problems were exacerbated by doing road tests requiring her to "sit in cars with heavy smoke smell or lots of perfume" (Tr. 189). November, 2010

treating records note a reduced range of lower back motion (Tr. 180).

March, 2011 treating records note Plaintiff's report of worsening asthma (Tr. 174). Plaintiff noted that she no longer did road tests "secondary to air fresheners" and "noxious smells" (Tr. 174). She reported increased wheezing and shortness of breath at home and work (Tr. 174). July, 2011 records show that Plaintiff currently took oral medication and inhalants for the lung condition (Tr. 166). An x-ray of the lungs showed "no active disease" (Tr. 164).

June, 2012 treating notes by Nurse Practitioner ("NP") Ann G. Cane state that Plaintiff experienced shortness of breath walking even short distances (Tr. 429). Cane noted that Plaintiff "lost her health insurance" and had not "seen the doctor for about [two] years" (Tr. 430). She observed hand swelling (Tr. 431). Plaintiff reported hip and knee pain (Tr. 429, 432). A rheumatoid factor test showed borderline results (Tr. 433). Plaintiff reported that her father died of COPD at the age of 62 (Tr. 431). Cane noted that Plaintiff's depression was successfully treated with medication (Tr. 430). Plaintiff exhibited shortness of breath (Tr. 431). A Spirometry test was abnormal (Tr. 436). August, 2012 records state that Plaintiff was prescribed Spiriva and was obtaining good results from oxygen (Tr. 427-428).

In October, 2012, Cane completed a medical questionnaire, noting diagnoses of COPD characterized by shortness of breath, rheumatoid arthritis, and depression (Tr. 439). Cane opined that Plaintiff experienced limited mobility and required the use of a walking aid due to an unsteady gait (Tr. 439-440). Cane found that Plaintiff was unable to stand or walk

for more than 10 minutes at a time or sit for more than two to four hours a day (Tr. 443). She opined that Plaintiff would require unscheduled breaks every four hours for 15 minutes at a time and was limited to occasional bilateral manipulative functioning (Tr. 443). Cane found that Plaintiff was limited to twisting, stooping, crouching, and climbing on a "rare" basis (Tr. 443-444). She found that Plaintiff would be expected to miss more than four days of work each month due to illness (Tr. 443).

Cane's December, 2012 treating records state that Plaintiff was no longer able to afford oxygen treatment (Tr. 447). Plaintiff reported pain upon lumbar and lumbosacral movement (Tr. 447).

### 2. Consultative and Non-Examining Sources

In November, 2011, P. Jeffrey Wright Ph.D performed a non-examining Psychiatric Review Technique on behalf of the SSA, finding that the conditions of depression and anxiety were non-severe (Tr. 394). The same month Kanika Chaudhuri, M.D. performed a non-examining physical Residual Functional Capacity Assessment, finding that Plaintiff could lift 50 pounds occasionally and 25 frequently; sit, stand, or walk for about six hours in an eight-hour workday; and push and pull without limitation (Tr. 409). Dr. Chaudhuri found that Plaintiff did not experience postural, manipulative, visual, or communicative limitations (Tr. 410-412). She found that Plaintiff would be required to avoid concentrated exposure to "fumes, odors, dusts, gases, and poor ventilation (Tr. 412).

### C. VE Testimony

VE Erin O'Callaghan classified Plaintiff's former jobs as a driver's license examiner

and office clerk as semiskilled as exertionally light and the cashier position as unskilled and light[2] (Tr. 38). The ALJ posed the following question, describing a hypothetical individual of Plaintiff's age, education, and work experience,:

> [Assume that such a person has an exertional limitation of lifting 50 pounds occasionally and 25 pounds frequently, sitting, standing, and walking six hours, and jobs that would avoid concentrated exposure to respiratory irritants putting this individual at the semiskilled level, could such a person be expect to perform claimant's past relevant work? (Tr. 39).

(Tr. 43). Based on the hypothetical limitations, the VE found that the individual would be able to perform all of Plaintiff's former jobs (Tr. 39). She testified further that additional limitations consisting of "lifting . . . 20 pounds occasionally and 10 pounds frequently, sitting, standing, and walking six hours, occasional climbing, balancing, stooping, crouching, kneeling, and crawling," with avoidance of "occasional exposure to respiratory irritants," would not preclude Plaintiff's past relevant work (Tr. 39).

The ALJ then described a hypothetical individual with the more restrictive limitations alleged by Plaintiff:

> [A] limitation of lifting five pounds occasionally, standing, sitting, and walking 10 minutes at a time, and sitting two to four hours with the need for unscheduled breaks every four hours for fifteen minutes. There is a limitation of grasping and fine manipulation, and reaching over the head for three of

---

[2] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

eight hours, and there is rarely twisting, stooping, crouching, and climbing, and this individual is likely to miss more than four days per month. Given these factors, would such an individual be able to perform claimant's past relevant work? (Tr. 40).

VE testified that the additional restrictions would preclude all competitive employment due to the need to rest at unpredictable intervals (Tr. 40).

### D. The ALJ's Decision

Citing the medical records, the ALJ found that Plaintiff experienced the severe impairments of asthma and COPD but that neither condition met or medically equaled a "listed impairment" under 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 13-14). The ALJ found that the conditions of hiatal hernia and depression did not cause more than "minimal limitation" in Plaintiff's work abilities (Tr. 13-14). He found that Plaintiff did not experience limitations in activities of daily living, social functioning, or concentration, persistence, or pace (Tr. 14). The ALJ found that Plaintiff had the residual functional capacity ("RFC") for exertionally light work with the following restrictions:

> [S]he can occasionally climb, balance, stoop, kneel, crouch, or crawl, and should avoid even moderate exposure to respiratory irritants" (Tr. 15).

The ALJ concluded that the RFC did not preclude Plaintiff's former work as a driver's license examiner or office clerk (Tr. 19).

The ALJ discounted Plaintiff's allegations of disabling limitations (Tr. 17-19). He noted that a July, 2011 chest x-ray "revealed no active disease" (Tr. 17). He found that that it was "not clear" whether there was "an objective medical basis" for the diagnosis of depression (Tr. 17). He rejected NP Cane's finding that Plaintiff was unable to perform even

-8-

sedentary work on the basis that Cane was an "unacceptable medical source" and because her opinion stood at odds with the objective findings (Tr. 18). He found that the allegations of arthritis were "not supported by any objective medical findings, such as x-ray or other diagnostic exam, decreased range of motion or strength, or tenderness upon exam" (Tr. 19).

### III. STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## IV.   FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five  to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## V. ANALYSIS

### A. The RFC

Plaintiff argues first that the RFC did account for all of her work-related limitations. *Plaintiff's Brief,* 4-8, *Docket #14.*  She faults the ALJ for failing to include the need for a cane,  shortness of breath on exertion, depression, and obesity in the RFC.  *Id.*

The RFC describes an individual's residual abilities. *Howard v. Commissioner of*

*Social Security*, 276 F.3d 235, 239 (6th Cir.2002). "RFC is to be an 'assessment of [Plaintiff's] remaining capacity for work' once her limitations have been taken into account" *Id.* (citing 20 C.F.R. § 416.945). In determining a person's RFC, it is necessary to consider (1) objective medical evidence as well as (2) subjective evidence of pain or disability. 20 C.F.R. § 404.1545(a)(1)(RFC must be based on all "relevant evidence"). The RFC must consider the alleged physical, mental, and environmental restrictions. § 404.1545(b-d).

The ALJ's failure to address Plaintiff alleged need for a walking aid constitutes error. The ALJ wholly discounted NP Cane's October, 2012 opinion, including her finding that Plaintiff required a walking aid for "shortness of breath on exertion, dizziness, [and] limited mobility" (Tr. 18). However, the record overwhelming supports the finding that Plaintiff experienced severe and chronic shortness of breath as well as significant joint pain. Cane's opinion that Plaintiff required a walking aid for safety is uncontradicted by any of the treating records.

More generally, the ALJ's rationale for the RFC for light work limited only by occasional postural limitations and an avoidance of moderate exposure to respiratory irritants is based a narrow, if not distorted reading of the record. In support of the RFC, the ALJ noted that a July, 2011 chest x-ray showed "no active disease" (Tr. 17). However, the x-ray was apparently ordered in response to a dramatic worsening of Plaintiff's condition from March, 2011 forward (Tr. 166, 174). The fact that the x-ray (apparently ordered to rule out conditions such as tuberculosis or lung cancer) shows "no active disease" does not contradict the longstanding diagnoses of COPD and asthma (Tr. 164). The Step Four finding that

-11-

Plaintiff could perform her former work of driver's license examiner as performed or as generally performed (Tr. 19) is particularly questionable, given that March, 2011 treating notes state that her employer no longer required her to perform road tests due to breathing problems caused by "air fresheners" and noxious smells" (Tr. 174). While the ALJ rejected Cane's disability opinion, he does not dispute her finding that 2012 spirometry results "were consistent with severe obstructive and restrictive disease" (Tr. 17). The ALJ's finding that Plaintiff could walk for up to six hours a day despite severe COPD and asthma is contradicted by the great weight of evidence.

Moreover, the ALJ's failure to consider the effects of obesity in crafting the RFC constitutes error. SSR 02–1p classifies individuals with a Body Mass Index (BMI) greater to or equal to 30.0 as "obese." *Id.,* 2002 WL 34686281, *2 (Sept. 12, 2002). While "Social Security Ruling 02–1p does not mandate a particular mode of analysis," an ALJ is required to "consider the claimant's obesity, in combination with other impairments, at all stages of the sequential evaluation." *Nejat v. Commissioner of Social Sec.*, 359 Fed. Appx. 574, 577 (6th Cir.2009)(citation and internal quotation marks omitted). The Commissioner must conduct an individualized assessment of the impact of the claimant's obesity on his or her functional abilities. SSR 02–1p.

Treating records created prior to and after the alleged onset of disability show that Plaintiff's BMI was well above 30 (Tr. 174, 447-449). While the ALJ cites Cane's 2012 finding that Plaintiff was obese, the administrative opinion contains no indication that the ALJ considered whether Plaintiff's weight affected her functional capacity (Tr. 17). The

ALJ's failure to make any reference to obesity at Step Two or in his rationale for the RFC warrants a remand for further fact-finding.

### B. SSR 06-03p

Plaintiff also faults the ALJ for failing to credit NP Cane's October, 2012 work-related assessment. *Plaintiff's Brief* at 8-11. Citing SSR 06-03p, she argues that while Cane is not an "acceptable treating source," the ALJ ought to have accorded significant weight to the opinion. *Id.*; 2006 WL 2329939, *2 (August 9, 2006).

Cane, a nurse practitioner, is not an "acceptable medical source," 20 C.F.R. §§ 404.1502, 404.1513(a). Nonetheless, her opinion "is entitled to consideration due to [her] expertise and long-term relationship" with Plaintiff. *Cole v. As true,* 661 F.3d 931, 939 (6th Cir. 2011); 20 C.F.R. § 404.1513(d)(1). In weighing the opinions of "other sources," it is "appropriate to consider such factors as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence." SSR 06–3p at *2. The Ruling notes the increasing significance of "other" medical sources in the disability determination:

> With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed 'acceptable medical sources' under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.

*Id.* at *4. The Ruling states further, "The evaluation of an opinion from a medical source

who is not an 'acceptable medical source' depends on the particular facts in each case. Each case must be adjudicated on its own merits based on a consideration of the probative value of the opinions and a weighing of all the evidence in that particular case." *Id.* at *5.

The ALJ rejected Cane's opinion that Plaintiff was unable to perform even sedentary work on the basis that (1) she was not an acceptable medical source, (2) her findings were "extreme," and, (3) the objective findings supported the finding that Plaintiff could perform exertionally light work (Tr. 18).

In this case, the non-acceptable source opinion is entitled to significant weight. First, Plaintiff's testimony and the medical files show that she was financially unable to obtain care from her long-term treating physician after being placed on disability retirement (Tr. 450). Notably, Cane was Plaintiff's *only* treating source after the alleged onset of disability. The transcript likewise shows that Plaintiff's ability to obtain proper treatment (including medicine and oxygen treatment for COPD) was hampered by financial constraints (Tr. 447, 451). While Cane had treating Plaintiff approximately four months before issuing a disability opinion, the records show that her opinion was supported by tests confirming the presence of "severe" COPD (Tr. 450, 453). Cane's opinion that Plaintiff was unable to walk or stand for more than 10 minutes at a time is consistent with objective testing supporting the diagnosis of severe COPD and Plaintiff's testimony that she experienced shortness of breath and fatigue after walking short distances (Tr. 32, 453). While testing for rheumatoid arthritis showed borderline results, Cane's diagnosis of osteoarthritis, based on the her clinical observations, supports Plaintiff's claims of constant joint pain.

Further, while the ALJ observed that Plaintiff was "collecting [a] pension," (Tr. 16), he failed to note that in fact, she had been placed on disability retirement (Tr. 27, 30, 450-451). SSR 06–3p at *6 states that "evidence of a disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered." Moreover, the ALJ is required "explain the consideration given" to the other disability determinations. While the ALJ was not required to adopt the disability finding of Plaintiff's former employer, his failure to even acknowledge that Plaintiff received a *disability* pension further undermines the determination.

The above-discussed errors compel a remand. The transcript in this case shows not only a strong case for disability, but an overwhelming case. The ALJ's Step Four finding that Plaintiff could do her past relevant work is unsupported by substantial evidence, as is his finding that this now-56-year-old women with a well-established respiratory impairment could perform light work. Therefore, the case must be remanded for an award of benefits. *Faucher v. Secretary of Health and Human Services*, 17 F.3d 171 (6th Cir.1994).

## VI.   CONCLUSION

For these reasons, Defendant's motion for summary judgment [Dock. #20] is DENIED, Plaintiff's motion for summary judgment [Dock. #14] is GRANTED, and the case is REMANDED FOR AN AWARD OF BENEFITS.

Judgment for Plaintiff will be entered.

IT IS SO ORDERED.

        /s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Date: August 28, 2015

## Certificate of Service

I certify that a copy of this order was served upon parties of record on August 28, 2015 via electronic or postal mail.

        /s/A. Chubb
CASE MANAGER